IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| REGINALD JONES, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 20-cv-1128-NJR |
| | ) |
| ANTHONY WILLS, FRANK LAWRENCE, KRISTA ALLSUP, KYLE HESS, MONTGOMERY WATERMAN, JOSEPH CHILDERS, KELLY MAUE, and JOHN DOE #'s 1-4, | ) |
| | ) |
| Defendants. | ) |

# MEMORANDUM AND ORDER

**ROSENSTENGEL, Chief Judge:**

Plaintiff Reginald Jones, an inmate of the Illinois Department of Corrections ("IDOC") who is currently incarcerated at Menard Correctional Center, brings this action for deprivations of his constitutional rights pursuant to 42 U.S.C. § 1983. In his Complaint (Doc. 1), Jones alleges Defendants denied him protective custody and tried to place him in an area of the prison that would put him at risk of harm in violation of both the First and Eighth Amendments. Jones seeks declaratory judgment, monetary damages, and injunctive relief.

This case is now before the Court for preliminary review of the Complaint pursuant to 28 U.S.C. § 1915A. Under Section 1915A, the Court is required to screen prisoner complaints to filter out non-meritorious claims. *See* 28 U.S.C. § 1915A(a). Any portion of a complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or asks for money damages from a defendant who by law is immune from such relief must be dismissed. 28 U.S.C. § 1915A(b).

1

## The Complaint

The Court first notes that Jones's Complaint is difficult to decipher due to its length and Jones's penmanship. The Court was able to ascertain the following allegations in the Complaint (Doc. 1): On April 5, 2020, Jones requested protective custody outside of Menard from Krista Allsup due to a previous staff assault and threats made to Jones by staff and other inmates (*Id.* at p. 16). On April 13, 2020 he was released from segregation, but he refused to leave and was issued a disciplinary ticket. He was taken to an interview with Allsup about his requested placement by Kelly Maue. On May 11, 2020, he was interviewed by Montgomery Waterman and Joseph Childers about earlier attempts on his life, but they allowed two inmates to overhear the conversation, placing Jones in danger if he was placed in general population or protective custody at Menard based on the allegations he made (*Id.* at p. 18). He was denied protective custody on May 14, 2020 (*Id.* at p. 19). On May 20, 2020 Kyle Hess and Kelly Maue tried to move Jones to protective custody despite the apparent denial of placement. Jones again refused placement and was issued a ticket. Allsup later informed him that he was denied protective custody placement but refused to allow him to appeal the denial (*Id.* at pp. 20-21). Jones contends the effort to send him to protective custody, despite having been denied placement, was an effort to place his life in danger. Grievances and letters to Anthony Wills and Allsup about his predicament went unanswered.

As to the individual defendants, Jones makes the following allegations. Anthony Wills participated in the denial of his placement in protective custody and refused to respond to his grievances about his placement. He also informed Wills of the attempted transfer to protective custody through a letter, but Wills did nothing (*Id.* at pp. 27-29). Allsup denied his request to appeal his protective custody denial and then participated in the attempt to send him to protective

custody despite being denied the request (*Id*. at p. 31). She did not inform him of the denial of his placement, nor did she give him a chance to appeal the denial (*Id*. at p. 32). He notified Allsup of the risk to his life during the interview with her for protective custody (*Id*. at p. 34). He believes that she denied his request for protective custody out of retaliation for his filing lawsuits against officials at Menard (*Id.* at p. 35). She was also aware that Maue tried to place him in protective custody after the denial and did nothing (*Id.* at p. 36).

Waterman also participated in the attempt to send Jones to protective custody in Menard (*Id*. at p. 37). He interviewed Jones in internal affairs and allowed workers to be present and overhear the conversation. This placed Jones at risk of danger if he was ever placed in general population or protective custody at Menard (*Id*. at pp. 37-38). This was also done in retaliation for filing a lawsuit against Waterman (*Id*. at p. 38). Hess directly participated in the attempt to move Jones to protective custody even though he was denied a protective custody request (*Id*. at p. 40). He told Hess that he requested protective custody outside of Menard, not inside Menard, but Hess refused to listen. Maue was also aware of his status in protective custody intake and took him to his interview with Allsup. She allowed workers to be present to overhear the contents of the interview with Allsup, placing his life in danger. Maue was aware of the denial of protective custody status but then informed Jones that he would be moving to protective custody in Menard (*Id*. at p. 45). He believes she did this out of retaliation for Jones filing another case (*Id*. at p. 47).

Frank Lawrence signed the protective custody form, denying Jones's request for protective custody (*Id*. at p. 48). He was a defendant in another case, but refused to recuse himself on the vote as to whether Jones received protective custody (*Id*. at p. 51). Jones alleges that Lawrence denied the request for protective custody in retaliation for Jones suing him in other cases and filing

3

grievances (*Id.*). He also knew about the attempted transfer to protective custody and failed to investigate or do anything about it.

Childers conducted an interview with Jones in internal affairs and two inmates were allowed to overhear the interview, which put him at risk (*Id.* at p. 54). Childers then participated in the protective custody vote and denied him protective custody (*Id.* at p. 55). Jones also believes the denial was done in retaliation as Childers was a defendant in another of Jones's cases (*Id.*).

Jones also includes four John Does in his Complaint. He alleges that they were aware that Jones was denied protective custody but allowed his name to be placed on a transfer sheet to protective custody unit anyway (*Id.* at p. 57). John Doe #1 is an administrative major and would have been aware of Jones's placement on the transfer sheet and his denial of protective custody (*Id.* at p. 59). John Doe #2 is a placement officer and was responsible for Jones's placement on the transfer sheet to protective custody despite having been deemed ineligible for protective custody. John Doe #3 was the shift commander and allowed Jones to be transferred without first checking his eligibility for protective custody (*Id.* at p. 60). He was aware that he was not eligible and allowed him to be moved anyway. John Doe #4 was an internal affairs officer and allowed Jones to be moved to protective custody (*Id.* at p. 61). He knew that the interview with Childers in internal affairs placed him at risk and allowed him to be placed on the transfer sheet (*Id.*).

## Discussion

Based on the allegations in the Complaint, the Court finds it convenient to divide the *pro se* action into the following three counts:

**Count 1:** **Eighth Amendment failure to protect claim against Anthony Wills, Krista Allsup, Frank Lawrence, and Joseph Childers for denying Jones's request for protective custody placement outside of Menard.**

4

**Count 2:** Eighth Amendment failure to protect claim against Anthony Wills, Krista Allsup, Montgomery Waterman, Kyle Hess, Kelly Maue, Frank Lawrence, Joseph Childers, and John Does #1-4 for trying to place Jones in protective custody, after being denied placement, in an effort to place Jones in danger of attack from other inmates and staff.

**Count 3:** First Amendment retaliation claim against Krista Allsup, Montgomery Waterman, Frank Lawrence, Joseph Childers, and Kelly Maue for denying his request for protective custody placement and then trying to place him in protective custody because Jones filed previously lawsuits against Menard staff.

The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. **Any other claim that is mentioned in the Complaint but not addressed in this Order should be considered dismissed without prejudice as inadequately pled under the *Twombly* pleading standard.**[1]

At this stage, Jones states a viable Eighth Amendment claim for failure to protect against Anthony Wills, Krista Allsup, Frank Lawrence, and Joseph Childers in Count 1. *Farmer v. Brennan,* 511 U.S. 825, 834, 837 (1994); *Santiago v. Walls,* 599 F.3d 749, 756 (7th Cir. 2010). He also states a viable claim against Anthony Wills, Krista Allsup, Montgomery Waterman, Kyle Hess, Kelly Maue, Frank Lawrence, Joseph Childers, and John Does #1-4 in Count 2.

Jones also states a viable First Amendment retaliation claim against Allsup, Waterman, Lawrence, Childers, and Maue in Count 3. *Antoine v. Ramos*, 497 F. App'x 631, 633-34 (7th Cir. 2012); *Bridges v. Gilbert*, 557 F.3d 541, 551 (7th Cir. 2009).

Because Jones requests injunctive relief, an official capacity claim is also added against Anthony Wills for the purpose of implementing any injunctive relief that Jones might be awarded.

---

[1] *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (an action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face").

**Pending Motions**

In addition to his Complaint, Jones filed both a motion for stay of residence (Doc. 8) and motion for notice of intent (Doc. 11). As to his motion for stay of residence (Doc. 8), Jones requests an order from the Court requiring him to stay in the North II Segregation Unit at Menard (*Id*. at p. 1). He indicates that he is set to be transferred to either general population or protective custody and either transfer will pose a threat to his life. He believes the fact that he has filed this lawsuit as well as other lawsuits against officials at Menard puts his life in further danger (*Id*. at p. 3). He notes that his scheduled out-date from segregation is December 16, 2020 and he plans to again refuse housing (*Id*. at p. 5). The Court notes that his Complaint also sought injunctive relief, including a temporary restraining order ("TRO") and preliminary injunction. Based on the allegations in the motion, the Court construes Jones's motion as a motion for preliminary injunction. The Court will direct Anthony Wills (in his official capacity) to respond to the motion in an expedited fashion. Response is due **on or before January 22, 2021**. To the extent that Jones also seeks a TRO, the Court concludes that a TRO should not issue in this matter. Jones's allegations do not set forth specific facts demonstrating the likelihood of immediate and irreparable harm *before Defendants can be heard.*

Jones's second motion is titled a motion of intent (Doc. 11). He reiterates that he faces continued harm from the Defendants. He notes that he is around Defendants in this case and other cases on a daily basis, putting him at further risk. He indicates that he intends to pursue this case and wants the Court to take note of the continued threat in considering his prior request for a stay of residence. The Court **DENIES** the motion as moot as it appears to merely be additional

argument in support of his motion for stay of residence (Doc. 8). The Court will, instead, construe the motion as a supplement to his original motion.

## Disposition

For the reasons stated, Count 1 shall proceed against Anthony Wills, Krista Allsup, Frank Lawrence, and Joseph Childers. Count 2 shall proceed against Anthony Wills, Krista Allsup, Montgomery Waterman, Kyle Hess, Kelly Maue, Frank Lawrence, Joseph Childers, and John Does #1-4. Count 3 shall proceed against Krista Allsup, Montgomery Waterman, Frank Lawrence, Joseph Childers, and Kelly Maue.

The Clerk of Court shall prepare for Defendants Anthony Wills, Frank Lawrence, Krista Allsup, Kyle Hess, Montgomery Waterman, Joseph Childers, and Kelly Maue: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the Complaint, and this Memorandum and Order to the defendants' place of employment as identified by Jones. If a defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that defendant, and the Court will require that defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

If a defendant can no longer be found at the work address provided by Jones, the employer shall furnish the Clerk with the defendant's current work address, or, if not known, defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the Complaint and shall not waive filing a reply pursuant to 42 U.S.C. Section 1997e(g). **Pursuant to Administrative Order No. 244, Defendants need only respond to the issues stated in this Merit Review Order**.

If judgment is rendered against Jones, and the judgment includes the payment of costs under Section 1915, Jones will be required to pay the full amount of the costs, regardless of whether his application to proceed *in forma pauperis* is granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Finally, Jones is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* Fed. R. Civ. P. 41(b).

**IT IS SO ORDERED.**

**DATED:  1/8/2021**

_____
**NANCY J. ROSENSTENGEL**
**Chief U.S. District Judge**

## **Notice to Plaintiff**

The Court will take the necessary steps to notify the appropriate defendants of your lawsuit and serve them with a copy of your complaint. After service has been achieved, the defendants will enter their appearance and file an Answer to your Complaint. It will likely take at least **60 days** from the date of this Order to receive the defendants' Answer, but it is entirely possible that it will take **90 days** or more. When all the defendants have filed Answers, the Court will enter a Scheduling Order containing important information on deadlines, discovery, and procedures. Plaintiff is advised to wait until counsel has appeared for the defendants before filing any motions, to give the defendants notice and an opportunity to respond to those motions. Motions filed before defendants' counsel has filed an appearance will generally be denied as premature. **Plaintiff need not submit any evidence to the Court at this time, unless specifically directed to do so.**