IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| REGINALD JONES, )<br>)<br>Plaintiff, )<br>)<br>vs. )<br>)<br>)<br>ANTHONY WILLS, FRANK )<br>LAWRENCE, KRISTA ALLSUP, KYLE )<br>HESS, MONTGOMERY WATERMAN, )<br>JOSEPH CHILDERS, KELLY MAUE, )<br>and JOHN DOE #'s 1-4, )<br>)<br>Defendants. ) | Case No. 20-cv-1128-NJR |

## MEMORANDUM AND ORDER

**ROSENSTENGEL, Chief Judge:**

This matter is before the Court on Plaintiff Reginald Jones's motion for stay of residence (Doc. 8), which the Court has interpreted as a motion for preliminary injunction (Doc. 15). In his motion, Jones asks the Court to enter an order requiring officials at Menard Correctional Center ("Menard") to keep him in his current housing assignment – the North II Segregation Unit at Menard. Defendant Anthony Wills, the current warden of Menard, has filed a response (Doc. 31) to the motion, and Jones has filed supplements (Docs. 30 and 33) and a reply (Doc. 34) to the motion. The Court held an evidentiary hearing on April 7, 2021.

### THE COMPLAINT

On October 26, 2020, Jones filed a Complaint alleging officials at Menard denied him protective custody and tried to place him in an area of the prison that would put him

at risk of harm. According to the Complaint, Jones requested protective custody outside of Menard because he was being threatened by staff and other inmates, and because of a previous staff assault.

On January 10, 2021, the Court issued a Memorandum and Order (Doc. 15) and allowed Jones to proceed on the following claims:

> **Count 1:** **Eighth Amendment failure to protect claim against Anthony Wills, Krista Allsup, Frank Lawrence, and Joseph Childers for denying Jones's request for protective custody placement outside of Menard.**
>
> **Count 2:** **Eighth Amendment failure to protect claim against Anthony Wills, Krista Allsup, Montgomery Waterman, Kyle Hess, Kelly Maue, Frank Lawrence, Joseph Childers, and John Does #1-4 for trying to place Jones in protective custody, after being denied placement, in an effort to place Jones in danger of attack from other inmates and staff.**
>
> **Count 3:** **First Amendment retaliation claim against Krista Allsup, Montgomery Waterman, Frank Lawrence, Joseph Childers, and Kelly Maue for denying his request for protective custody placement and then trying to place him in protective custody because Jones filed previously lawsuits against Menard staff.**

### BACKGROUND[1]

On May 7, 2020, Jones checked into Menard's Protective Custody Unit and submitted a request to be placed in protective custody outside of Menard. Jones listed the following information as the basis for his request: "Federal case #19-1281, #19-1286, #20-158 and Menard grievance #162-8-19. I believe all paperwork will show my reason for

---

[1] The facts contained herein are taken from the Complaint (Doc. 1), Jones's Motion for Stay of Residence (Doc. 8), Jones's supplemental briefing (Docs. 30 and 33), Jones's Reply (Doc. 34), Defendant's Response (Doc. 31), and exhibits attached to these pleadings.

checking in." As a result of his request, Jones was transferred to the Protective Custody Intake Unit and was temporarily assigned to a cell in the Reception and Classification Unit ("R&C").

On May 11, 2020, Allsup interviewed Jones regarding his request for protective custody. Jones reported that, because of his underlying criminal charge and because of pending federal litigation, he has been harassed by inmates since 2016. He claimed that he overheard inmates in the segregation unit discussing attacking him and reported that, in December 2019, he was pepper sprayed by guards at Menard. Allsup noted that Jones could not name a specific threat and referred his request to internal affairs. That same day, internal affairs officer Joseph Childers interviewed Jones and recommended that his request for protective custody be denied, citing a lack of evidence suggesting that Jones's life was in danger. On May 14, 2020, Menard officials (a case worker supervisor, the associate warden of programs, and the warden) signed a "Review for Placement," denying Jones's request for protective custody at the institutional level. Jones, however, was not notified about the denial until June 2020.

On May 20, 2020, officers Hess and Maue attempted to transfer Jones from his temporary cell assignment in the R&C to a cell in West House, a gallery specifically reserved for inmates in protective custody status. Jones told the officers he was requesting protective custody outside of Menard and refused to be transferred, stating "I don't want to go to P.C. here at Menard, so I'm not going." In his Complaint, Jones states that because he was requesting protective custody outside of Menard, the attempt to transfer him to West House was suspicious. Because Jones refused housing, he was transferred to the

North II Segregation Unit at Menard. To date, Jones has continued to refuse housing and, as a result, remains in segregation.

## MOTION FOR STAY OF RESIDENCE

In his motion and associated briefing, Jones asks the Court to enter an order requiring officials at Menard to keep him housed in the North II Segregation Unit. Jones claims that because of his history of filing lawsuits against officials at Menard—including this case—if he is transferred to either general population or protective custody inside of Menard, his life will be in danger. He also claims that two unidentified inmates intend to harm him because they overheard statements he made during his interview with Allsup on May 11, 2020.

Defendants argue that Jones has not shown a likelihood of success on the merits because there is no constitutional right for a prisoner to be housed in a particular institution, at a particular custody level, or in a particular portion or unit of a correctional institution.[2] Defendants also contend that Jones cannot establish irreparable harm because his allegations are vague and speculative. Finally, Defendants contend that Jones has an adequate remedy at law—he could complete the process available at Menard by renewing his request for protective custody and/or by completing the administrative grievance process.

In his reply (Doc. 34), Jones revisits the allegations surrounding his request for

---

[2] Defendants also contend that Jones cannot show a likelihood of success on the merits because he failed to exhaust his administrative remedies as to his request for protective custody. The Court notes that Defendants have raised exhaustion as an affirmative defense (Doc. 53, p. 7). The Court, however, need not resolve the question of exhaustion at this time. The Court will consider argument pertaining to this affirmative defense if and when Defendants move for summary judgment on the issue of exhaustion.

protective custody and continues to vaguely allege that if he is transferred outside of segregation, his life will be in danger. In support of this claim, Jones alleges that "staff" at Menard pepper sprayed him and attempted to harm him in 2019. He again claims that unidentified inmates intend to harm him because they overheard comments he made during his interview with Allsup in May 2020.

## PRELIMINARY INJUNCTION STANDARD

A preliminary injunction is an "extraordinary and drastic remedy" for which there must be a "clear showing" that a plaintiff is entitled to relief. *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (quoting 11A Charles Alan Wright, Arthur R Miller, & Mary Kay Kane, Federal Practice and Procedure §2948 (5th ed. 1995)). The purpose of such an injunction is "to minimize the hardship to the parties pending the ultimate resolution of the lawsuit." *Faheem-El v. Klincar*, 841 F.2d 712, 717 (7th Cir. 1988). A plaintiff has the burden of demonstrating:

  1. a reasonable likelihood of success on the merits;
  2. no adequate remedy at law; and
  3. irreparable harm absent the injunction.

*Planned Parenthood v. Commissioner of Indiana State Dep't Health*, 699 F.3d 962, 972 (7th Cir. 2012).

As to the first hurdle, the Court must determine whether "plaintiff has any likelihood of success—in other words, a greater than negligible chance of winning." *AM General Corp. v. DaimlerChrysler Corp.*, 311 F.3d 796, 804 (7th Cir. 2002). Once a plaintiff has met his burden, the Court must weigh "the balance of harm to the parties if the injunction is granted or denied and also evaluate the effect of an injunction on the

public interest." *Id.*; *Korte v. Sebelius*, 735 F.3d 654, 665 (7th Cir. 2013). "This equitable balancing proceeds on a sliding-scale analysis; the greater the likelihood of success of the merits, the less heavily the balance of harms must tip in the moving party's favor." *Korte*, 735 F.3d at 665. In addition, the Prison Litigation Reform Act provides that a preliminary injunction must be "narrowly drawn, extend no further than necessary to correct the harm . . . ," and "be the least intrusive means necessary to correct that harm." 18 U.S.C. § 3626(a)(2). Finally, federal courts must exercise equitable restraint when asked to take over the administration of a prison, something that is best left to correctional officials and their staff. *See Sandin v. Conner*, 515 U.S. 472, 482 (1995); *Rizzo v. Goode*, 423 U.S. 362, 379 (1976) (noting that where a plaintiff requests an award of remedial relief that would require a federal court to interfere with the administration of a state prison, "appropriate consideration must be given to principles of federalism in determining the availability and scope of [such] relief.").

## ANALYSIS

Jones has not made a clear showing of immediate or irreparable injury that will result without preliminary injunction. During the hearing, Jones was repeatedly asked to identify a specific or imminent threat to his safety but was unable to do so. Instead, Jones's allegations were vague, speculative, and/or related to past conduct. For example, Jones testified that his life might be in danger because he is incarcerated with staff members he has named as defendants in federal lawsuits and/or named in grievances. Jones, however, does not allege that any of these individuals, some of whom he continues to encounter while housed in segregation, have specifically threatened him in any way.

Jones also alleges that he was pepper sprayed by two corrections officers in December 2019, but he was unable to articulate any specific or imminent threat from these individuals and admitted that he is unaware of any recent threats to his safety.

As to threats from other inmates, Jones claims that his life may be in danger because two inmates threatened him on May 11, 2020, before he began his interview with Allsup. According to Jones, the unidentified inmates threatened to "lay [him] down" if he proceeded with the interview. But Jones cannot identify these individuals and admitted he does not know if the inmates are still incarcerated at Menard. When asked why he believes these individuals would pose a threat to him if he were transferred to protective custody, Jones offered only speculation, stating that the "individual and any others he were to enlist could sign up for protective custody, as well, and come and harm me inside of there." Allegations such as these are too speculative to warrant the injunctive relief Jones requests. "[A] speculative fear of injury is not a ground for an injunction." *Wright v. Miller*, 561 F.App'x 551, 554 (7th Cir. 2014).

Finally, Jones insists that the attempt to move him from a cell in the R&C Unit to a cell in West House demonstrates that someone intends to harm him because (1) he requested protective custody outside of Menard and (2) when officers attempted to complete the transfer, his request for protective custody had already been denied at the institutional level. First, getting from these allegations to a nefarious conspiracy to harm Jones requires a speculative leap. As such, Jones's suspicions do not warrant issuing the requested preliminary injunction.

Second, the testimony of Terri Wingerer, a clerk in Menard's placement office,

provides a credible explanation for why Jones's cell assignment was changed on May 20, 2020.[3] According to Wingerer, when an inmate checks himself into the Protective Custody Unit, he receives a new housing assignment in one of Menard's designated protective custody wings—one of two galleries in West House. If the designated protective custody galleries in West House are full, however, the inmate is assigned to an overflow unit until space becomes available. Here, when Jones checked himself into protective custody, West House was at capacity. Accordingly, Jones was assigned to an overflow unit in the R&C. On May 20, 2020, when space was available, Jones was assigned to a designated protective custody unit in West House. Wingerer further testified that, at the time of the transfer, the placement office had not been notified about Jones's request being denied. But, according to Wingerer, a denial at the institutional level would not have altered the placement office's decision to transfer Jones to a cell in West House. This is because an inmate remains in protective custody until he voluntarily checks himself out or until there is a final decision from the Administrative Review Board.

After considering the parties' briefing and the relevant testimony, the Court finds that Jones has failed to articulate any specific or imminent threat to his safety. Further, Jones has an adequate remedy at law—he can renew his request for protective custody when he is released from segregation and/or he can complete the administrative review process by appealing to the Administrative Review Board. Additionally, as noted during

---

[3] The Court also notes that an affidavit provided by Krista Allsup (Doc. 31-1) is consistent with the testimony provided by Terri Wingerer.

the hearing, to the extent that Jones seeks placement outside of Menard, he can request a transfer to another facility, and to the extent that Jones is concerned about a threat from a specific inmate, he can submit a request to Menard officials for issuance of a "keep separate" order.

For these reasons, the Motion for Stay of Residence (Doc. 8) is **DENIED**.

**IT IS SO ORDERED.**

DATED:   April 14, 2021

_____
**NANCY J. ROSENSTENGEL
Chief U.S. District Judge**