IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

REGINALD JONES,

          Plaintiff,

v.

ANTHONY WILLS, FRANK
LAWRENCE, KRISTA ALLSUP, KYLE
HESS, MONTE WATERMAN, JOSEPH
CHILDERS, KELLY MAUE, TERRI
WINGERTER, and CHRISTOPHER
BRADLEY,

          Defendants.

Case No. 20-cv-1128-NJR

## MEMORANDUM AND ORDER

**ROSENSTENGEL, Chief Judge:**

This matter is before the Court on a motion for summary judgment (Docs. 130, 131) filed by Defendants Krista Allsup, Joseph Childers, Kyle Hess, Frank Lawrence, Kelly Maue, Monte Waterman, Anthony Wills, and Terri Wingerter. Plaintiff Reginald Jones filed a response (Doc. 137) and supplemental responses (Doc. 142, 177, and 184). On January 5, 2022, the Court held an evidentiary hearing on the motion. On January 14, 2022, Defendant Christopher Bradley sought to join in Defendants' motion for summary judgment (Doc. 204). That motion was granted, and the Court considers the issue of exhaustion as to Bradley along with the other Defendants.

### BACKGROUND

On October 26, 2020, Jones, an inmate of the Illinois Department of Corrections ("IDOC") currently housed at Menard Correctional Center ("Menard"), filed a Complaint

pursuant to 42 U.S.C. § 1983 alleging that he was denied protective custody and that Defendants tried to place him in an area of the prison that would put him at risk of harm in violation of both the First and Eighth Amendments to the United States Constitution (Doc. 1). After the threshold review of his Complaint, Jones was allowed to proceed on the following claims:

> Count 1:     Eighth Amendment failure to protect claim against Anthony Wills, Krista Allsup, Frank Lawrence, and Joseph Childers for denying Jones's request for protective custody placement outside of Menard.
>
> Count 2:     Eighth Amendment failure to protect claim against Anthony Wills, Krista Allsup, Montgomery Waterman, Kyle Hess, Kelly Maue, Frank Lawrence, Joseph Childers, and Christopher Bradley for trying to place Jones in protective custody, after being denied placement, in an effort to place Jones in danger of attack from other inmates and staff.
>
> Count 3:     First Amendment retaliation claim against Krista Allsup, Montgomery Waterman, Frank Lawrence, Joseph Childers, and Kelly Maue for denying his request for protective custody placement and then trying to place him in protective custody because Jones filed previously lawsuits against Menard staff.

(Doc. 15, pp. 4-5).

All Defendants (except Christopher Bradley, who had not yet been identified) filed a motion for summary judgment for failure to exhaust administrative remedies, arguing that Jones failed to submit any grievances to the Administrative Review Board ("ARB"). Although they acknowledged that grievances regarding protective custody can be submitted directly to the ARB, they argued that Jones has not filed any grievance with the ARB since 2019. After Bradley entered his appearance, he joined the summary judgment motion.

LEGAL STANDARDS

Summary judgment is proper if the pleadings, discovery materials, disclosures, and affidavits demonstrate no genuine issue of material fact such that [Defendants are] entitled to judgment as a matter of law." *Wragg v. Village of Thornton*, 604 F.3d 464, 467 (7th Cir. 2010). Lawsuits filed by inmates are governed by the provisions of the Prison Litigation Reform Act ("PLRA"). 42 U.S.C. §1997e(a). That statute states, in pertinent part, that "no action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." *Id*. (emphasis added).

The Seventh Circuit requires strict adherence to the PLRA's exhaustion requirement. *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006) (noting that '[t]his circuit has taken a strict compliance approach to exhaustion"). Exhaustion must occur before the suit is filed. *Ford v. Johnson*, 362 F.3d 395, 398 (7th Cir. 2004). A plaintiff cannot file suit and then exhaust his administrative remedies while the suit is pending. *Id.* Moreover, "[t]o exhaust remedies, a prisoner must file complaints and appeals in the place, and at the time, the prison administrative rules require." *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2005). Consequently, if a prisoner fails to properly utilize a prison's grievance process, "the prison administrative authority can refuse to hear the case, and the prisoner's claim can be indefinitely unexhausted." *Dole*, 438 F.3d at 809.

Under *Pavey*, the Seventh Circuit held that "debatable factual issues relating to the defense of failure to exhaust administrative remedies" are not required to be decided by

a jury but are to be determined by the judge. *Pavey v. Conley*, 544 F.3d 739, 740-41 (7th Cir. 2008). Thus, where failure to exhaust administrative remedies is raised as an affirmative defense, the Seventh Circuit set forth the following recommendations:

> The sequence to be followed in a case in which exhaustion is contested is therefore as follows: (1) The district judge conducts a hearing on exhaustion and permits whatever discovery relating to exhaustion he deems appropriate. (2) If the judge determines that the prisoner did not exhaust his administrative remedies, the judge will then determine whether (a) the plaintiff has failed to exhaust his administrative remedies, and so he must go back and exhaust; (b) or, although he has no unexhausted administrative remedies, the failure to exhaust was innocent (as where prison officials prevent a prisoner from exhausting his remedies), and so he must be given another chance to exhaust (provided that there exist remedies that he will be permitted by the prison authorities to exhaust, so that he's not just being given a runaround); or (c) the failure to exhaust was the prisoner's fault, in which event the case is over. (3) If and when the judge determines that the prisoner has properly exhausted his administrative remedies, the case will proceed to pretrial discovery, and if necessary a trial, on the merits; and if there is a jury trial, the jury will make all necessary findings of fact without being bound by (or even informed of) any of the findings made by the district judge in determining that the prisoner had exhausted his administrative remedies.

*Id.* at 742.

A. **Illinois Exhaustion Requirements**

As an IDOC inmate, Jones was required to follow the regulations contained in IDOC's Grievance Procedures for Offenders ("grievance procedures") to properly exhaust his claims. 20 Ill. Administrative Code §504.800 *et seq.* The grievance procedures first require inmates to file their grievance with the counselor within 60 days of the discovery of an incident. 20 Ill. Admin. Code §504.810(a). The grievance form must:

> contain factual details regarding each aspect of the offender's complaint, including what happened, when, where, and the name of each person who is the subject of or who is otherwise involved in the complaint. This

provision does not preclude an offender from filing a grievance when the names of individuals are not known, but the offender must include as much descriptive information about the individual as possible.

20 Ill. Admin. Code §504.810(c). Grievances that are unable to be resolved through routine channels are then sent to the grievance officer. 20 Ill. Admin. Code §504.820(a). The Grievance Officer will review the grievance and provide a written response to the inmate. 20 Ill. Admin. Code §504.830(a). "The Grievance Officer shall consider the grievance and report his or her findings and recommendations in writing to the Chief Administrative Officer within two months after receipt of the grievance, when reasonably feasible under the circumstances." 20 Ill. Admin. Code §504.830(e). "The Chief Administrative Officer shall review the findings and recommendation and advise the offender of his or her decision in writing. *Id.*

If the inmate is not satisfied with the CAO's response, he or she can file an appeal with the Director through the ARB. The grievance procedures specifically state, "[i]f, after receiving the response of the Chief Administrative Officer, the offender still believes that the problem, complaint or grievance has not been resolved to his or her satisfaction, he or she may appeal in writing to the Director. The appeal must be received by the Administrative Review Board within 30 days after the date of the decision." 20 Ill. Admin. Code §504.850(a). The inmate shall attach copies of the Grievance Officer's report and the CAO's decision to his appeal. *Id.* "The Administrative Review Board shall submit to the Director a written report of its findings and recommendations." 20 Ill. Admin. Code §504.850(d). "The Director shall review the findings and recommendations of the Board and make a final determination of the grievance within six months after receipt of the

appealed grievance, when reasonably feasible under the circumstances. The offender shall be sent a copy of the Director's decision." 20 Ill. Admin. Code §504.850(e).

The grievance procedures do allow for an inmate to file an emergency grievance. In order to file an emergency grievance, the inmate must forward the grievance directly to the CAO who may "[determine] that there is a substantial risk of imminent personal injury or other serious or irreparable harm to the offender" and thus the grievance should be handled on an emergency basis. 20 Ill. Admin. Code §504.840(a).

Finally, the grievance procedures allow for certain issues to be submitted directly to the ARB. These issues include:

1)  Decisions regarding protective custody placement, including continued placement in or release from protective custody.

2)  Decisions regarding the involuntary administration of psychotropic medication.

3)  Decisions regarding disciplinary proceedings that were made at a facility other than the facility where the offender is currently assigned.

4)  Other issues that pertain to a facility other than the facility where the offender is currently assigned, excluding personal property and medical issues.

20 Ill. Admin. Code §504.870(a).

In addition to the grievance procedures, Jones points to the procedures for appealing a protective custody decision. That provision states that the CAO shall make the final determination on protective custody placement and inform the offender in writing. 20 Ill. Admin. Code §501.320(c). If the offender intends to grieve the decision, "he must indicate his intent to do so in writing at the time he is served with the [CAO's]

decision." 20 Ill. Admin. Code §501.320(d). The CAO "shall notify the Administrative Review Board who will review the grievance" and provide recommendations to the director, who will make the final decision. 20 Ill. Admin. Code §501.320(d)(1).

ANALYSIS

Jones acknowledges that he did not file a grievance on the issue of his protective custody. Instead, he argues that he was thwarted from doing so by Warden Anthony Wills, when Wills ruled on Jones's protective custody request. *See Walker v. Sheahan*, 526 F.3d 973, 979 (7th Cir. 2000) (an inmate is not required to appeal his grievance if he submits the grievance to the proper authorities but never receives a response); *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006) (a remedy can be unavailable to a prisoner if the prison does not respond to the grievance or uses misconduct to prevent a prisoner from exhausting his resources). He argues that Warden Wills did not sign the denial himself, but improperly delegated the decision, which prevented him from exhausting his administrative remedies. He also argues that he was never provided with the protective custody status denial form, which he had to mark to grieve the issue, and that Warden Wills did not properly notify the ARB about the appeal.

### A. Protective Custody Denial

First, Jones makes much of the fact that Warden Wills did not sign the protective custody status form, but instead had his designee sign the form. At the evidentiary hearing, Warden Wills acknowledged that Frank Lawrence signed the form as his designee (Doc. 1-1, p. 13; Doc. 215, pp. 34 and 38). But the simple fact that Warden Wills's designee signed the form does not invalidate the form, nor would it prevent Jones from

appealing the form to the ARB. There is no indication that the CAO is required to personally make the determination or that he cannot delegate this responsibility to another individual.[1] Travis Bayler, a member of the ARB, also testified at the evidentiary hearing that the Code allowed for the CAO to delegate this responsibility to another individual (Doc. 215, p. 73). Even if the Code required Warden Wills to personally sign the protective custody status form, there is no indication that his failure to sign personally would prevent Jones from exhausting his administrative remedies or would cause the ARB to reject the appeal. The fact that a designee signed the form, instead of Warden Wills, did not affect Jones's ability to exhaust his protective custody placement.

Instead, whether Jones was able to exhaust his administrative remedies regarding his denial of protective custody depends on whether he had access to the protective custody status form (Doc. 1-1, p. 13). Section 501.320(d) clearly states that if an inmate intends to grieve his denial, he must "do so in writing at the time he is served with he [CAO's] decision." The protective custody status form also states that the inmate may grieve the decision and may do so on the form.[2] The standard offender grievance form also states that protective custody denials must be grieved "on the protective custody status notification." (Doc. 177, p. 5). Bayler acknowledged that an inmate needs to use the

---

[1] The administrative code allows the CAO to delegate his responsibilities "[u]nless otherwise specified." 20 Ill. Admin. Code §501.305(a). Another individual cannot routinely perform a duty where the Code states that the CAO "shall personally perform the duties," although the CAO may designate another individual during his temporary absence. 20 Ill. Admin. Code §501.305(b). As to the request for protective custody, the Code states that the "[t]he [CAO] shall make the final determination." 20 Ill. Admin. Code §501.320(c).

[2] The form reads: "You may immediately grieve this decision to the Administrative Review Board in accordance with DR 501 by so indicating below. If grieved, you will remain in protective custody status until a final decision is made by the Director." (Doc. 1-1, p. 13).

protective custody status form as there is a place on the form to grieve the decision to the ARB (Doc. 215, p. 65-68). Jones would need to be provided with the status form in order to grieve his placement denial to the ARB.[3]

Simply put, Jones did not receive the form from the administration at Menard. Under the "Offender's Acknowledgement" section of the status form, there is no indication that Jones was provided the form and a note to the side states, "Went to Temp Confinement then Seg on 5/20/20" (Doc. 1-1, p. 13). Warden Wills testified that because Jones was sent to segregation, instead of protective custody, the protective custody request process was stopped (Doc. 215, p. 37, 43). He also acknowledged that Jones never received the protective custody status form because he went to segregation (*Id*. at p. 37). But without the protective custody form, Jones could not exhaust his administrative remedies by checking the box to appeal the denial.

Warden Wills testified that Jones did not ask for a copy of the protective custody status form, stating that it was Jones's responsibility to inquire as to the receipt of the form (Doc. 215, p. 52-53, 55). But the Code states that an inmate "shall be informed of the decision in writing" and must indicate his intent to grieve "at the time he is *served* with the [CAO's] decision." 20 Ill. Admin. Code §501.320(c) and (d) (emphasis added). The CAO is supposed to provide the inmate with his decision. Further, there is a box on the

---

[3] Jones makes much of the fact that the form had to be in its original triplicate form to grieve. There is nothing in the Code or on any of the forms that suggests the original triplicate is needed. Bayler testified that the triplicate form was not needed to appeal to the ARB (Doc. 215, p. 78). Nor was the appeal automatic as Jones suggested. Wills was not required to send the documents to the ARB unless Jones indicated his desire to appeal (*Id*. at p. 70).

form for a staff member to sign that the form was served to the offender (Doc. 1-1, p. 13). Contrary to Wills's testimony, Jones was not required to ask for the form when he did not receive it.[4] Nor was he required to file another grievance (*see* Doc. 177, p. 5).[5] Although he did eventually receive a copy of the form after requesting one from his counselor, he was never formerly served with the form or allowed the opportunity to sign the acknowledgement and request an appeal.[6] Having never been served with the protective custody status form, Jones was, in essence, thwarted from being able to appeal the denial of his protective custody placement. Thus, the Court **DENIES** Defendants' summary judgment as to Jones's claims regarding the denial of his request for protective custody (Counts 1 and 3).

---

[4] In fact, Warden Wills made a number of misstatements about the grievance process as it relates to the issue of protective custody. He initially testified that it was at the inmate's discretion to send the grievance to the ARB (Doc. 215, pp. 32, 35). But the form clearly states it is the administration who forwards the appeal to the ARB (Doc. 1-1, p. 13). He also insisted that Jones could have filed another grievance when he failed to receive the protective custody status form (Doc. 215, pp. 36,). But he acknowledged that the form allowed him to just check the box that he was appealing (*Id*.). He later disputed whether the form could be used as a grievance for a protective custody denial, noting that it was up "for interpretation at this point." (Doc. 215, p. 40). And Wills continued to insist that Jones could have filed a separate grievance about his placement, even though the documentation presented stated otherwise (Doc. 215, p. 55). His statements were in direct contradiction to both the Code, the standard grievance form, and the protective custody status form itself (Doc. 1-1, p.1 3, Doc. 177, p. 5). *See also* 20 Ill. Admin. Code 501.230(d).

[5] The standard grievance form states: "Protective Custody Denials may be grieved immediately via the local administration on the protective custody status notification."

[6] Both parties discussed at the evidentiary hearing whether an appeal after Jones received the form on June 10, 2020, would have been timely. But the Court does not find the possible timeliness of an appeal relevant because Jones was never formally served with the denial. He was just provided with a copy by his counselor (Doc. 215, p. 8). He was never formally served or allowed to appeal, as required by the terms of the protective custody status form (Doc. 1-1, p. 13).

### B. Improper Placement in Protective Custody

In addition to the denial of his request for placement in protective custody, Jones's Complaint also alleges that on May 20, 2020, Defendants improperly tried to place him in protective custody despite the fact he had been denied placement. His Complaint alleges that this was done in retaliation (Count 3) and amounted to a failure to protect him from the danger of attack by other inmates (Count 2). Jones's protective custody status form could not serve as a grievance to exhaust these claims as they took place after he was denied protective custody status.

Instead, Jones points to his emergency grievance dated July 7, 2020 (Doc. 177, p. 5). That grievance discusses the attempt to move Jones to protective custody on May 20, 2020 (*Id*. at pp. 5-6). Jones testified that the grievance submitted to the Court was a handwritten copy because Menard does not allow copies of grievances to be made until they are signed by an official who reviewed them (Doc. 215, p. 13). Jones also testified that he wrote a letter to Warden Wills on July 2, 2020, informing Wills that he would be filing a grievance (Doc. 1-1, pp. 34-35). Although Kelly Pierce testified that there was no record of this grievance in the grievance logs, the Court finds Jones's testimony on this topic credible. His testimony regarding placing the grievance in the grievance receptacle in segregation was specific and credible. He testified he never received a response, which he would not have, because there is no record the grievance was ever received. At that point, he had done all he could to exhaust his claims. Accordingly, Defendants' motion for summary judgment as to the remaining claims is also **DENIED**.

CONCLUSION

For the reasons stated above, Defendants' motion for summary judgment (Docs. 130, 131) is **DENIED**.

**IT IS SO ORDERED.**

**DATED:   February 9, 2022**

_____
**NANCY J. ROSENSTENGEL**
**Chief U.S. District Judge**