IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **REGINALD JONES,** | |
| **Plaintiff,** | |
| v. | Case No. 20-cv-1128-NJR |
| **ANTHONY WILLS,** *et al.*, | |
| **Defendants.** | |

# MEMORANDUM AND ORDER

**ROSENSTENGEL, Chief Judge:**

Plaintiff Reginald Jones, an inmate of the Illinois Department of Corrections ("IDOC") who is currently incarcerated at Menard Correctional Center ("Menard") brings this action for deprivations of his constitutional rights pursuant to 42 U.S.C. § 1983. His Complaint (Doc. 1) alleges that Defendants denied him protective custody and tried to place him in an area of the prison which would cause harm to him.

This matter is before the Court on Jones's motion for temporary restraining order (Doc. 329). Jones also filed two supplements to his motion (Docs. 340 and 343). Defendants filed a response in opposition to the motion (Doc. 346).

### BACKGROUND

On October 26, 2020, Jones filed his Complaint alleging that Defendants denied his request for protective custody and then improperly tried to place him in protective custody at Menard, in an attempt to cause him harm (Doc. 1). Jones alleged that Defendants tried to harm him in retaliation for filing grievances and lawsuits. The events

which make up the claims in his Complaint took place in 2020 (Doc. 15, p. 2)

Jones was allowed to proceed on the following counts:

Count 1: Eighth Amendment failure to protect claim against Anthony Wills, Krista Allsup, Frank Lawrence, and Joseph Childers for denying Jones's request for protective custody placement outside of Menard.

Count 2: Eighth Amendment failure to protect claim against Anthony Wills, Krista Allsup, Montgomery Waterman, Kyle Hess, Kelly Maue, Frank Lawrence, Joseph Childers, Terri Wingerter, and Christopher Bradley for trying to place Jones in protective custody, after being denied placement, in an effort to place Jones in danger of attack from other inmates and staff.

Count 3: First Amendment retaliation claim against Krista Allsup, Montgomery Waterman, Frank Lawrence, Joseph Childers, and Kelly Maue for denying his request for protective custody placement and then trying to place him in protective custody because Jones filed previous lawsuits against Menard staff.

(Doc. 15, p. 4-5).

On October 31, 2022, Jones filed the pending motion for temporary restraining order (Doc. 329). Jones alleged that he needed medical care and an order to prevent him from suffering injuries at the hands of staff. Specifically, ever since the alleged incident on May 20, 2020, where Jones alleged staff tried to move him to protective custody despite being denied protective custody, Jones has refused housing and remained in segregation (*Id.* at p. 3). He believes remaining in segregation is the only way to ensure his safety prior to his release on parole (*Id.*).

According to the allegations set forth in his motion, on November 15, 2022, a non-party staff member (later identified as Officer Kempfer), informed Jones that paying for

his appeal in Case No. 19-cv-1281-NJR was "not going to save [him]" (*Id.* at p. 4; Doc. 340, p. 3). He has also endured other "threats" from staff who are not a party to this case (*Id.* at p. 5). In a supplement (Doc. 340), Jones alleges that an Officer Fenton told Jones that he would not be paroled. Jones believes he is in compliance with all of IDOC's requirements for parole. He indicates that both Officer Kempfer and an Officer Edwards appear to have knowledge of Jones's cases, including pending motions (*Id.* at pp. 2-3). He believes the information that other officers are reporting to him comes from Sandra Quick, a defendant in one of his other cases (*Id.* at p. 3). He believes officers are trying to thwart his ability to be paroled (*Id.* at p. 4). In his second supplement, he alleges that Officer Edwards indicated that a written statement in Case No. 19-cv-1386-SPM would lead to Jones suffering a broken neck prior to his parole (Doc. 343, p. 2).[1]

In addition to the threats to his safety, Jones alleges that he is currently suffering from pain throughout his body. His condition includes a lump on his body, numbness in his left arm and hand, temporary blindness, spots, and pain in his eyes (Doc. 328, p. 5). He suffers from spasms and loss of use in his arms, hands, and fingers (Doc. 340, p. 3). Although he has concerns for his medical conditions, Jones indicates he is reluctant to place a sick call slip and leave his cell due to threats from staff. Jones believes if he goes to the infirmary, he will face threats from Sergeant Anthony Jones, who is a defendant in another case (*Id.* at p. 4). Due to Anthony Jones's mere presence in the infirmary, Jones

---

[1] Although Jones refers to the motion to compel at Doc. 204 in Case No. 19-cv-1386-SPM as the source of the offending statement that would lead to his injury, he does not point to the specific quote or reference in the motion. He merely alleges that his motion implied that related video footage does not match what occurred.

has refused to return to the infirmary for any care since August 29, 2019. He believes all of these individuals are connected both to each other and to defendants in this case and defendants in other cases before this Court (*Id*. at p. 5).

### LEGAL STANDARDS

A temporary restraining order ("TRO") may issue without notice only if "specific facts in an affidavit or a verified complaint clearly show that immediate or irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition." Fed. R. Civ. P. 65(b)(1)(A). Such injunctive relief is also warranted "to prevent a substantial risk of serious injury from ripening into actual harm." *Farmer v. Brennan*, 511 U.S. 825, 845 (1994). The same legal analysis is used to determine whether a TRO or a preliminary injunction is warranted.

A preliminary injunction is an "extraordinary and drastic remedy" for which there must be a "clear showing" that a plaintiff is entitled to relief. *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (quoting 11A Charles Alan Wright, Arthur R Miller, & Mary Kay Kane, Federal Practice and Procedure §2948 (5th ed. 1995)). The purpose of such an injunction is "to minimize the hardship to the parties pending the ultimate resolution of the lawsuit." *Faheem-El v. Klincar*, 841 F.2d 712, 717 (7th Cir. 1988). A plaintiff has the burden of demonstrating:

1. a reasonable likelihood of success on the merits;
2. no adequate remedy at law; and
3. irreparable harm absent the injunction.

*Planned Parenthood v. Commissioner of Indiana State Dept. Health*, 699 F.3d 962, 972 (7th Cir. 2012).

As to the first hurdle, the Court must determine whether "plaintiff has any likelihood of success—in other words, a greater than negligible chance of winning." *AM General Corp. v. DaimlerChrysler Corp.*, 311 F.3d 796, 804 (7th Cir. 2002). Once a plaintiff has met his burden, the Court must weigh "the balance of harm to the parties if the injunction is granted or denied and also evaluate the effect of an injunction on the public interest." *Id.*; *Korte v. Sebelius*, 735 F.3d 654, 665 (7th Cir. 2013). "This equitable balancing proceeds on a sliding-scale analysis; the greater the likelihood of success of the merits, the less heavily the balance of harms must tip in the moving party's favor." *Korte*, 735 F.3d at 665. In addition, the Prison Litigation Reform Act provides that a preliminary injunction must be "narrowly drawn, extend no further than necessary to correct the harm . . . ," and "be the least intrusive means necessary to correct that harm." 18 U.S.C. § 3626(a)(2). Finally, pursuant to Federal Rule of Civil Procedure 65(d)(2), a preliminary injunction would bind only the parties, their officers or agents, or persons in active concert with the parties or their agents.

## ANALYSIS

Simply put, Jones fails to meet the standard for injunctive relief. Specifically, he has not shown a likelihood of success on the merits. In fact, the claims raised in his motion for injunctive relief are not at all related to the claims in this case. The allegations involve threats from individuals who are not parties to this lawsuit and include health conditions which are not at issue in this case. Although Jones tries to connect these new allegations to his current claims in this case, he fails to make the connection. He alleges, without any support, that the non-parties threatening him are supportive of Sandra Quick, but Quick

is not a party in this case. He believes that Kelly Maue and Monte Waterman, who are defendants in this case, have a connection to Quick through grievance No. 162-8-19, which Jones alleges Quick made inexhaustible. Jones brings up this grievance in a number of his motions before this Court, but the Court does not find that this grievance creates a connection between Quick and the defendants in this case. Nor does it create a connection with the non-parties Jones cites to in his motion for injunctive relief. There is simply no connection between these new allegations regarding threats to his safety and the claims in this case.

Further, his claims regarding his need for medical care are even less related to the claims in this case. He argues that he cannot go to the infirmary because Sergeant Jones, a defendant in another case, works there and he fears for his safety. Jones fails to allege that any of the defendants in this case work in the infirmary, nor do they have any identifiable connection to Sergeant Jones. The only evidence Jones offers is his wildly speculative theory that the individuals are all connected in some vast conspiracy against him. He fails to offer any evidence that such a conspiracy exists.

Jones also fails to demonstrate that he will suffer harm if he is not awarded injunctive relief. The Court notes that Jones has not clearly set forth what relief he seeks from the Court. He vaguely states that he seeks the Court's help in ensuring necessary medical care and to avoid injury until his parole date. But it appears that the only thing preventing Jones from receiving medical care is Jones himself. He could request medical care at any time; he simply refuses to leave his cell. He could also file an emergency grievance about his need for care and about the threats against him. It does not appear

from his filings that he has made any attempt on his own to receive care or report his concerns to the administration. Nor is there any evidence that any defendant or non-party is actively preventing him from receiving care. Jones could take steps on his own to obtain medical care and report his concerns with staff without the issuing of an injunction. The fact that he has not done so also shows that he still has legal remedies which he can pursue. Thus, Jones has not met the standard for obtaining injunctive relief in this case.

## Conclusion

For the reasons stated above, Jones's motion for injunctive relief (Doc. 332) is **DENIED**.

**IT IS SO ORDERED.**

DATED:   November 21, 2022

_____
**NANCY J. ROSENSTENGEL**
**Chief U.S. District Judge**